REQUESTED BY: Dear Senator Newell:
You have requested from this office an opinion as to whether vacant land in the older parts of urban areas could be declared blighted and/or substandard pursuant to the definitions of substandard and blighted areas contained in LB 986, a bill to amend the Nebraska Community Development Law.
Your request makes no attempt to specify to what degree vacant land would comprise such an area which is a determination necessary for a conclusive answer in any particular instance. Thus, we construe your inquiry as requesting the general legal principles and guidelines which would be applied in specific situations as they would be encountered under LB 986.
Essentially you raise a question of statutory construction. Inasmuch as the definitions provision of LB 986 would be but one of several which comprise an entire act, the Nebraska Community Development Law, we are required to look to the other provisions and the purpose of the whole act as would be amended by LB 986 for guidance in interpreting the particular section of which you inquire. Furthermore, because the Nebraska Supreme Court has not had occasion yet to interpret the particular provisions of the Nebraska Community Development Law, and more specifically those which are relevant to your inquiry, we cannot be totally definitive in our response.
As you point out, the definitions contained in LB 986 indicate that the principal characteristic of a `substandard' area would be the predominance of buildings.
Relative to a blighted area, several characteristics are listed which would render an area blighted for purposes of the Nebraska Community Law. While it is readily apparent that the definition of a blighted area is broader and less restrictive than that of a substandard area, your question arises because neither specifically provides for nor mentions vacant land.
Nevertheless, the weight of authority on community development law which has begun to develop elsewhere is that the fact that some of the lands in an area selected for redevelopment are vacant or contain sound structures does not render inapplicable the community development law or a particular project.
This line of reasoning reflects the fact that community development initiatives are intended to have an `area,' rather than a structure-by-structure, focus and impact. To what extent vacant lands can comprise such an area is a question of degree that can be answered only on a case-by-case basis within the context of the particular community development law which is applicable. It is apparent from our review of case law in other jurisdictions that the courts are more likely to validate redevelopment areas substantially or predominately consisting of vacant land where, unlike the provisions of LB 986, the authorizing community development law makes some provision for or mention of vacant lands. See 44 A.L.R.2d 1439 and 45 A.L.R.3d 1096.
Obviously, it is not possible at this time to say for certain how much vacant land could be included in a substandard or blighted area consistent with LB 986 if it were enacted. However, a few observations significantly narrow this uncertainty. First, relative to a blighted area, if the cause of the vacancy can be demonstrated to be defective or inadequate street layout, faulty lot layout in relation to size, diversity of ownership, improper subdivision or obsolete planning, or any of the other reasons spelled out in section 2(11) of LB 986, then those vacant lands could comprise a part of a blighted area or such an area in its entirety.
Secondly, section 18-2123, R.R.S. 1943, presently provides that under certain conditions undeveloped vacant land not within a substandard or blighted area might properly be the focus of community development activities if such land is essential to the proper clearance or redevelopment of such an area or is a necessary part of the general urban renewal and development program of the city. Apart from the significance of this provision relative to vacant lands adjacent to a redevelopment area, it is our view that it also supports the proposition that LB 986 would authorize to a certain degree vacant lands found within such an area to be subject to redevelopment activity so long as the focus and impact of those activities and the particular project from which they emanate are genuinely area-wide in nature.
Finally, section 18-2153, R.R.S. 1943, presently states that the Nebraska Community Development Law is to be liberally construed in connection with all grants of power, authority, rights or discretion given to cities or villages and all incidental powers necessary to carry into effect the provisions of the law. While this section supports our views set out above, relative to LB 986, we feel it would not go so far as to authorize the inclusion in any redevelopment area of an unlimited amount of vacant land, given the stated purpose and the provisions of the Nebraska Community Development Law and LB 986 in their present form.